**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

      vs.                                 Cr. No. 09-1741 JAP

RICHARD GAMBOA,

      Defendant-Movant.

**MEMORANDUM OPINION AND ORDER**

On February 11, 2020, Defendant-Movant, Richard Gamboa (Defendant), filed a MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) (Doc. 103) (Motion in text, Mot. in citations). On March 9, 2020, Plaintiff-Respondent United States (Government) responded.[1] On March 26, 2020, Defendant replied.[2] On April 6, 2020, Defendant supplemented his Motion,[3] and on April 7, 2020, Defendant filed an appendix,[4] which included approximately 4,595 pages of Defendant's prison and medical records. The Government responded to Defendant's Supplement and Sealed App. on April 20, 2020.[5]

On April 21, 2020, Defendant asked the Court for an emergency hearing on the Motion,[6] and on April 21, 2020, Defendant filed additional supplemental authorities.[7] On May 14, 2020, the

---

[1] UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO THE FIRST STEP ACT (Doc. 107) (Response in text and Resp. in citations).
[2] DEFENDANT RICHARD GAMBOA'S REPLY IN SUPPORT OF HIS MOTION FOR COMPASSIONATE RELEASE (Doc. 108) (Reply).
[3] SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. 3582(c)(1)(A) (Doc. 109) (Def.'s Suppl.).
[4] SEALED APPENDIX TO MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) (Doc. 110) (Sealed App.).
[5] UNITED STATES' RESPONSE TO DEFENDANT'S SUPPLEMENTAL MOTION FOR COMPASSIONATE RELEASE PURSUANT TO THE FIRST STEP ACT (Doc. 111) (Gov't Supp. Resp. to Mot.).
[6] REQUEST FOR EMERGENCY HEARING ON MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) (Emergency Hearing Motion) (Doc. 112).
[7] NOTICE OF SUPPLEMENTAL AUTHORITIES ACCORDING TO LOCAL RULE 7.8 (Doc. 113) (Suppl. Authorities). The Court will refer to Defendant's Suppl. and the Suppl. Authorities jointly as "Supplements."

Government filed a response to Defendant's Suppl. Authorities.[8] On May 13, 2020, the BOP placed Defendant in home confinement.

The Court held a hearing on the Motion on April 30, 2020.[9] Present at the hearing were Nicholas Hart and Theresa Duncan for Defendant. Teri Abernathy represented the Government. The Court continued the hearing to May 15, 2020 at which time the same counsel appeared on behalf of the parties.[10] The Court granted Defendant's request to file additional briefing on the sole issue of whether Defendant had exhausted all administrative remedies with the Bureau of Prisons (BOP), and Defendant filed additional briefing on May 22, 2020.[11] After reviewing the briefings, the prison and medical information, and the arguments of counsel, the Court will grant Defendant's Motion.[12]

## FACTS

On June 24, 2009, the Government filed an Information charging Defendant of Conspiracy to distribute Methamphetamine in violation of 21 U.S.C. § 846 on or about July 26, 2008 through September 21, 2008 and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) on July 26, 2008. Information (Doc. 29) at 1. On that same day, Defendant pleaded guilty to both charges. Plea Agreement (Doc. 36). After a role and acceptance of responsibility adjustment, Defendant's offense level was 26 and his criminal history category was I. In the United States Sentencing Guidelines (U.S.S.G. in citation and Guidelines in

---

[8] UNITED STATES' SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO THE FIRST STEP ACT (Doc. 118) (Gov't Suppl. Resp.).
[9] In hearing Defendant's Emergency Hearing Motion, the Court granted that motion.
[10] At the hearing, the Government used a four-page exhibit that it later filed. *See* UNITED STATES' NOTICE OF SEALED EXHIBIT (Doc. 119).
[11] SUPPLEMENTAL BRIEFING REGARDING MR. GAMBOA'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) (Doc. 121) (Suppl. Br.). At the hearing, the Government declined an opportunity to submit additional briefing, stating that its existing briefing contained all its arguments.
[12] In the Government's Suppl. Resp. to Mot., the Government asks the Court to impose a 14-day quarantine if it grants Defendant's Motion. Resp. (Doc. 111) at 7 n.2. Because Defendant has already been quarantined for 14 days and now is in home confinement, this request is moot.

text), this offense level and criminal history combination suggests a sentencing range of 63 to 78 months. But the methamphetamine conviction statutorily required a minimum term of 120 months (10 years) imprisonment, and the weapons conviction statutorily required a minimum term of 60 months (5 years), to be served consecutively. In addition, the sentence included a sixty-month (5 years) term of supervised release. Defendant did not qualify for the safety valve. *See* Sentencing Tr. (Doc. 78) at 3. The Court sentenced Defendant to 120 months (10 years) on the methamphetamine charge and 60 months (5 years) on the weapons charge to be served consecutively. Defendant began serving his sentence on May 24, 2010. His projected release date is February 19, 2023.

While in prison, Defendant took several educational courses. Sealed App. (Doc. 110-27) at 8-9. In 2013, he was furloughed[13] so that he could transfer from a federal detention center in Ohio to a minimum-security facility in Arizona. He has not received any disciplinary infractions. Sealed App. (Doc. 110-27) at 15, 50.

In March 2019, Defendant had a rectal abscess for which he had surgery. In May 2019, he had two more rectal abscesses and developed a fistula. Subsequently, he was diagnosed with severe pancolitis and Crohn's disease, which is an incurable bowel disease. He was in the hospital for twelve days and then released to an inpatient rehabilitation center, where he spent six months. At some time during that period, Defendant received an ileostomy bag, which he still uses. *See* Sealed App., (Doc. 110).

---

[13] Furloughs are "an authorized absence from an institution by an inmate who is not under escort of a staff member, U.S. Marshal, or state or federal agents." Federal Bureau of Prisons, Program Statement, Inmate Furloughs, Part. 3 § 570.32 (Jan. 20, 2011) bop.gov/policy/progstat/5280_009 (last visited June 10, 2020).

Following his diagnosis of Crohn's disease, Defendant began taking Remicade. This medication treats Crohn's disease but weakens the immune system. Mot., Remicade Information (103-3) at 1.

After Defendant left the inpatient rehabilitation center, the Bureau of Prisons (BOP) transferred him to the Springfield Medical Center. There, Defendant spent 90 percent of his time in bed, could not sustain a seated position, and used a walker exclusively.

Defendant submitted a compassionate release request to his warden on December 6, 2019, requesting release based on his debilitated medical condition because of Crohn's disease. Mot., Letter to Warden (Doc. 103-1) at 2. On January 17, 2020, the warden denied the request, stating that Defendant did not meet the medical criteria, because he "do[es] not have a chronic debilitating medical condition that leaves [defendant] disabled or capable of only limited self-care" and "will have full functional capacity once healed." Resp., Ex. 2 (Doc. 107-1).

On April 7, 2020, Defendant's case manager, Michael Hazen, prepared a BOP Health Services Inmate Report Only, which assessed Defendant's eligibility for home confinement under the Coronavirus Aid, Relief and Economic Security Act, PL. 116-136, March 27, 2020, 134 Stat. 281 (CARES Act). Subsequently, the BOP approved Defendant's home confinement. On May 13, 2020, Defendant flew by commercial airline to Arizona where he began home confinement. Gov't Suppl. Resp. (Doc. 118) at 2.

## LEGAL STANDARD

After a court has imposed a sentence, it may modify the sentence only on the narrow grounds delineated in 18 U.S.C. § 3582. One avenue for modification is "compassionate release." Until the First Step Act of 2018 (FSA) was enacted on December 21, 2018, only the BOP could review an inmate's request for compassionate release. See FSA, PL 115-391, December 21, 2018, 132 Stat. 5194. The FSA amended § 3582(c)(1)(A) to permit an inmate to bring a motion in federal

4

court. The purpose behind the amendment is indicated in its subtitle, which states that it is intended to "increase[e] the use and transparency of compassionate release." *Id.* § 603(b)(1). The inmate may file a motion only after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A); *see also* FSA, PL 115-391, 132 Stat. 5194, § 603(b)(1).

Two circumstances permit a court to modify a term of imprisonment under § 3582(c)(1)(A). The one applicable here, § 3582(c)(1)(A)(i) indicates that compassionate release is established when "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).[14] The Guidelines policy statement for compassionate release is in § 1B1.13. U.S.S.G. § 1B1.13 (U.S. Sentencing Comm'n 2018).

The text of § 1B1.13 provides that a defendant must show three things to establish his eligibility for sentence modification: 1) "extraordinary and compelling reasons"; 2) the defendant "is not a danger to the safety of any other person or to the community;" and 3) and "the reduction is consistent with this policy statement." §1B1.13(1)-(3). The application notes for § 1B1.13 offer four definitions of "extraordinary and compelling circumstances." § 1B1.13 cmt. n.1(A)-(D). Defendant relies on the definitions found in 1(D), Other Reasons.

Under 1(D), compassionate release may be appropriate for "an extraordinary and compelling *reason other than or in combination with*, the reasons described in subdivisions (A) through (C)." *Id.* cmt. 1(D) (emphasis added). Defendant argues that comment (A)(ii)(I) is applicable as it provides relief for

---

[14] A defendant also may be eligible for compassionate release under § 3582(c)(1)(A) (ii) if "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g)." Defendant does not argue that § 3582(c)(1)(A)(ii) is applicable here.

a defendant who is "suffering from a serious physical or medical condition." *Id.* cmt, n. 1(A)(ii)(I).
To establish his eligibility under 1(D) and (A) Defendant refers to a BOP program statement that describes
the procedures for applying 18 U.S.C. § 3582. *See* Federal Bureau of Prisons P5050.50, Compassionate
Release Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(G) 2019
(Policy).

## ANALYSIS

Defendant argues that his uncontrolled Crohn's disease is a debilitating medical condition
that establishes an extraordinary and compelling reason for compassionate release. In opposition,
the Government contends: 1) this case is not properly before the Court; and 2) Defendant's Crohn's
disease is not a debilitating medical condition as defined by the Policy.

### A.  *Defendant's Motion for Compassionate Release is Properly Before the Court*

The Government claims that Defendant's Motion is not properly before the Court because
Defendant has not fully exhausted his administrative remedies. On December 6, 2019, Defendant
filed a request with the BOP for compassionate release based on his medical condition. On
February 11, 2020, more than thirty days after filing his initial request with the warden, Defendant
filed his Motion. The Government concedes that Defendant's original Motion is properly before
the Court. But, according to the Government, Defendant's Supplements transformed Defendant's
Motion from one that complied with the exhaustion requirement to one that does not. The
Government argues that Defendant's Motion is now premature because Defendant did not raise
the COVID-19 pandemic in his compassionate relief request to the BOP. Defendant's failure to
argue this point before the BOP, the Government contends, is fatal to the Motion. *See, e.g., United
States v. Valenta*, No. CR 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020),
*reconsideration denied*, No. CR 15-161, 2020 WL 1984319 (W.D. Pa. Apr. 27, 2020).

In *Valenta,* the defendant had several medical conditions including prostate cancer, sleep apnea, GERD, and pre-diabetes. *Id.* In January 2020, the defendant filed a request with the BOP for compassionate release based on these conditions, which the BOP denied. Defendant then filed a motion with the district court, in which he cited these conditions, but also included COVID-19 as another factor for the court's consideration. The court denied the entire motion, holding that because defendant had not argued COVID-19 as a factor before the BOP, his motion was precluded on all grounds. *See also United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 1872568 at *1 (D. Neb. Apr. 14, 2020) (same); *United States v. Mogavero*, 215CR00074JADNLK, 2020 WL 1853754 at *2 (D. Nev. Apr. 13, 2020) (same).

The Government argues that the reasoning of these cases is persuasive. According to the Government, the statute's administrative exhaustion requirement mandates that every factor a defendant raises before the district court must first be brought before the BOP, because the BOP is in the best position to evaluate the health of an inmate and the safety of the public. This argument mischaracterizes Defendant's filings.

As a preliminary matter, courts disagree on whether the exhaustion requirement is jurisdictional.[15] Many courts have found that the § 3582(c)(1)(A) administrative exhaustion requirement is a claims processing rule that does not limit a court's jurisdiction.[16] Others, like the *Valenta* court, strictly enforce the administration exhaustion requirement, concluding that without

[15] Defendant asserts that the Government should be estopped from asserting that the exhaustion requirement is jurisdictional because in more than one case the Government admitted that the exhaustion requirement was a claims-processing rule. *See e.g., United States v. Connel*, — F. Supp. 3d —, No. 18-CR-00281-RS-1, 2020 WL 2315858 at *3 (N.D. Cal. May 8, 2020). Because the Court decides this issue on other grounds, it will not discuss that argument here.
[16] See, e.g., *United States v. Haney*, — F. Supp. 3d. —, No. 19-CR-541 (JSR), 2020 WL 1821988 at *3 (S.D.N.Y. Apr. 13, 2020) ("accordingly, the Court concludes that the exhaustion requirement in § 3582(c)(1)(A) is a claims-processing rule that does not deprive this Court of jurisdiction."); *United States v. Reddy*, slip op, No. 13-CR-20358, 2020 WL 2320093 (E.D. Mich. May 11, 2020) (adopting *Haney* approach and waiving exhaustion requirement on the grounds that the defendant would suffer undue prejudice); *Connell*, 2020 WL 2315858 at * 5 (collecting cases).

7

administrative exhaustion, a court is without jurisdiction.[17] But the Court will leave that issue for another day, because the Court finds that Defendant's Motion substantively is the same as Defendant's request to the BOP.

The Motion Defendant filed in January argued that he qualified for compassionate release because of his Crohn's disease. Later, Defendant filed his Supplements which gave notice to the Court of additional new,[18] relevant information: 1) documents discussing the world-wide pandemic; and 2) documents indicating that the pandemic's effect is particularly lethal in prisons.[19] Because Defendant is now in home confinement, the Government's argument focuses solely on the effect on this Motion of Defendant's evidence about the pandemic.

But evidence about the pandemic offers only extrinsic evidence about the current environment, it does not change Defendant's substantive Motion. In his BOP request and his subsequent Motion, Defendant asserted that the medication he took for his Crohn's disease made him immunocompromised and thus, more susceptible to viruses. *Compare* Mot., Letter to Warden (Doc. 301-1) ("Mr. Gamboa suffers from a serious, incurable and debilitating illness" whose "risk of infection is unusually high") at 2-3 *with* Mot. at 1 ("Mr. Gamboa suffers from Crohn's disease, an incurable and debilitating bowel disease, that renders him capable only of limited mobility and self-care and puts him at greater risk for potentially fatal infections."). Both the request and the

---

[17] See, e.g., *United States v. Vence-Small*, — F. Supp. 3d —, No. 3:18-CR-00031 (JAM), 2020 WL 1921590 at *6 (D. Conn. Apr. 20, 2020) (court cannot read extraordinary and compelling reason into statute as justification for waiving mandatory exhaustion requirement); *United States v. Cox*, No. 4182020 WL 1923220, at *4 (S.D. Ind. Apr. 21, 2020) (court cannot read into the statute a special circumstance exception); *United States v. Alam*, — F. Supp. 3d —, 15-20351, 2020 WL 1703881 at *2 (E.D. Mich. Apr. 8, 2020) (collecting cases)

[18] Defendant also includes information about his reentry plan in the Supplemental Authority. But this information is not new, as it was included in his original Motion. *See* Mot., App. A (Doc. 103-1) at 2.

[19] The Suppl. Authority exhibits include: Letter dated April 1, 2020 from David Patton, et al., Co-chair of the Federal Public & Community Defenders Legislative Committee, to Hon. William P. Barr, Atty. Gen. (Doc. 109-1); Memorandum dated March 26, 2020 from the Attorney General to Director of Bureau Prisons (Doc. 109-2); Memorandum dated April 3, 2020 from the Attorney General to Director of Bureau of Prisons (Doc. 109-3); *United States v. Jeremy Rodriguez*, Crim. Action 2:03-cr-00271-AB-1 (E.D. Ky. April 1, 2020) (Doc. 109-4); Affidavit of Brie Williams, M.D. (Doc. 109-5); Resume of Brie Williams, M.D. (Doc. 109-6); CDC Guidelines About the Coronavirus (Doc. 109-7); Letter dated April 6, 2020 from Josephine Fluger about her arrangements for her son, Richard Gamboa (Doc. 109-8).

Motion cite a high risk of infection as a significant factor warranting compassionate release. Defendant's Supplements merely identify one potential source of infection, the COVID-19 coronavirus. Significantly, Defendant's Supplements do not present the Court with a new debilitating medical condition or a new risk factor.

Even if the Defendant had not introduced this evidence into this proceeding, the Court certainly could and does take judicial notice of the pandemic[20] and the effect it has had not only on the prison population, but on the community at large.[21] In January 2020, when Defendant filed his request with the BOP, and in February 2020 when Defendant filed his Motion, a pandemic had not yet been declared. Now it has.[22] The Government cites no case law or statute that precludes a party from offering previously unknown new information in support of a party's established position. Certainly, in deciding a defendant's compassionate release motion, the Court may consider all relevant factors.

### B. Defendant's Medical Condition is a Debilitating Medical Condition that Warrants Compassionate Release

A Defendant is eligible for compassionate release when a defendant shows: 1) extraordinary and compelling reasons; 2) the defendant is not a danger to the safety of any other person or to the community; and 3) reduction is consistent with the policy statement.

### 1) Extraordinary and Compelling Reasons and Consistency with the Policy Statement

---

[20] *See* Fed. R. Evid. 201. A court may take judicial notice of adjudicative facts, including its own files and records that "can be accurately and readily determined from sources whose accuracy cannot reasonably questioned." Rule 201(b)(2); *see also Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946 (10th Cir. 2001). This district has recognized the pandemic and altered its operations in response to it. *See* In the Matter Of: Court Operations in Light of the Coronavirus Outbreak (20-MC-00004-9), March 13, 2020 (observing the national emergency due to the pandemic caused by the spread of COVID-19).

[21] *See* In the Matter Of: Court Operations in Light of the Coronavirus Outbreak (20-MC-00004-9), March 13, 2020 (finding that the public health emergency justified the continuance of all grand jury proceedings and criminal trials and the suspension of the Speedy Trial Act). *See also*, In the Matter of: Court Operations Under the Exigent Circumstances Created by the Coronavirus Disease 2019 (20-MC-04-15), Apr. 1, 2020; In the Matter of: Court Operations Under the Exigent Circumstances Created By the Coronavirus Disease 2019 (Updated) (20 MC-04-17), Apr. 17, 2020.

[22] The World Health Organization (WHO) declared COVID-19 a pandemic on March 11, 2020. *See* WHO, https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19—11-march-2020 (last visited June 10, 2020).

Defendant argues that his medical condition meets the definition of an extraordinary and compelling reason under the "Other Reasons" category. First, Defendant argues that his Crohn's disease is a serious medical condition as defined by the Guidelines. § 1B1.13 cmt. n.1(A)(ii)(I) ("The defendant is—(I) suffering from a serious physical or medical condition."). The Policy explains that "a serious physical or medical condition" is:

> an incurable, progressive illness or . . . a debilitating injury from which [an inmate] will not recover. The BOP should consider a [reduction in sentence request] if the inmate is:
> • Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
> • Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

Policy § 3(b). Defendant argues that Crohn's disease meets the Policy definition of "serious medical condition."

The Government disagrees, arguing that Defendant's condition is not debilitating because it is treatable and not life threatening. To its Response the Government attached a medical note by a prison medical officer that states Defendant's fistula should heal in 6-12 months and he should be able to return to a mainline institution with full functional capability. *See* Resp., Ex.2 (Doc. 107-2). But, contrary to the Government's position, the Policy does not require that a condition be life threatening, only that the inmate have an incurable, progressive illness.

It is uncontroverted that Defendant has an incurable illness. In one year and three months, the progression of Defendant's Crohn's disease has led to two surgeries, a fistula, an ileostomy, and six months in a rehabilitation hospital. Now, Defendant is capable of only limited self-care, spends 90 percent of the day in bed, cannot sit down, and moves only with a walker. While the prison medical officer may be correct that Defendant will return to normal life at some point in the future, it is only a prediction. Thus far, Defendant's condition does not appear to have significantly improved; instead, it has progressively worsened. Notably, the prison medical officer also stated

that defendant's "medical history suggests this patient may have ***steeper than average end-of-life trajectory***." *Id.* (emphasis added)

Next, the Government asserts that Defendant's transfer from a BOP facility to home confinement now prevents Defendant from meeting the Policy requirements because it precludes him from establishing the self-care element. The language of comment (A) defines a serious medical or physical condition as one that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correction facility." But the Government's argument ignores the language of comment (D).

Comment (D) of the Guidelines directs a defendant to establish "an extraordinary and compelling reason ***other than or in combination with*** the reasons described in subdivision (A) through (C)." § 1B1.13 cmt. n. 1(D). (emphasis added). The Policy does not clarify what factors might be extraordinary and compelling under Other Reasons. While the language of the Guidelines may define a serious physical or medical condition under comment (A) as one that diminishes a defendant's ability to perform self-care in a correctional facility, comment (D) allows an inmate latitude to argue that his inability to perform self-care in any environment is another other reason that is a contributing factor to his serious medical condition.

The Government's argument is also weakened by its presumption that the Policy controls this Court's analysis. Because the Policy predates the FSA, many courts have concluded there are no "applicable policy statements." *See United States v. Beck*, 425 F. Supp. 3d 573, 587 (M.D.N.C. 2019) (holding "the terms of the First Step Act give courts independent authority to grant motions for compassionate release and says nothing about deference to BoP, thus establishing that Congress wants courts to take a *de novo* look at compassionate release motions"). Accordingly, these courts have held that the Policy is informative but not dispositive and "does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant."

*United States v. Schmitt*, CR12-4076-LTS, 2020 WL 96904 at *3 (N.D. Iowa Jan. 8, 2020) (collecting cases). On this basis, Courts have used the policy statements as "helpful guidance" that do not constrain the Court's examination of whether "extraordinary and compelling reasons exist under § 3582(c)(1)(A)(i). *Id.* Only a minority of courts have determined that after the passage of the FSA, the Guidelines still control the definition of "extraordinary and compelling." *See, e.g., United States v. Lynn*, No. CR89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019).

The Tenth Circuit has not directly addressed this issue. After the passage of the FSA, it appears that only three unpublished Tenth Circuit cases have examined § 3582(c)(1)(A). In *United States v. Saldana*, — Fed. Appx. —, No. 19-7057, 2020 WL 1486892 (March 26, 2020), the Defendant argued that he met the requirements of the "Other Reasons" category based on his post-conviction rehabilitation efforts, and post-sentencing Tenth Circuit case law. *Id.* at 3. The Tenth Circuit addressed the Policy in its analysis and cited and included the Policy guidelines for the "Other Reasons" inquiry. But the Tenth Circuit did not directly address the impact of the FSA on the policy statement. Significantly, though, the Tenth Circuit did acknowledge that while the BOP statement was entitled to ***some deference***, the statement was ultimately not controlling. *See Saldana*, 2020 WL 1486892 *2 (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995) for its "holding that BOP program statements are entitled to 'some deference' when they reflect a 'permissible construction of the statute.'") (emphasis added). *Saldana* is a strong indication that the Tenth Circuit would agree that the Policy does not restrict this Court's deference.

It is also noteworthy that the Policy precedes and therefore cannot address complications introduced by the pandemic. Since the onset of the pandemic in the United States, some courts have found that the outbreak of COVID-19, together with a diagnosed medical condition that puts an inmate at high risk of contracting and suffering an adverse outcome, is an important factor in the extraordinary and compelling inquiry. *See, e.g., United States v. Rodriguez*, No. 2:03-CR-

12

00271-AB-1, 2020 WL 1627331 (E.D. Pa Apr. 1, 2020). Significant also is Congress' response to the pandemic with the CARES Act.

The CARES Act gives the BOP the authority to put in home confinement a statutorily ineligible inmate, if the inmate is, by age or medical condition in accordance with CDC guidelines, particularly vulnerable to the COVID-19 virus. CARES Act, Pub. L. 116-136, Div. B, Title II § 12003(b)(2). Here, the BOP determined that Defendant is uniquely vulnerable to the COVID-19 virus and placed him in home confinement. In so doing, the BOP acknowledged that Defendant has a serious medical condition. While the BOP's determination that Defendant has a serious medical condition does not, on its own, establish Defendant's eligibility for compassionate release, it is a relevant factor that bears weight in the Court's analysis.[23]

The Court finds that Defendant's serious medical condition, limited mobility which makes it difficult for him to provide self-care, and his higher susceptibility to infections establish extraordinary and compelling reasons under § 3582(c)(1)A).

2) *The Defendant is not a danger to the Community*

Before reducing or modifying a defendant's sentence, a court must consider whether a defendant is dangerous to the community. Factors to consider are: the nature and circumstances of the inmate's offense, the inmate's criminal history, length of sentence and time served, the inmate's current age, the inmate's age at time of offense and sentence, the inmate's release plans, and whether release would minimize the seriousness of the offense. Policy § 7.

Defendant's offense, a methamphetamine crime committed while in possession of a gun, is undoubtedly a serious crime. But all other factors indicate that, despite the gravity of that crime,

---

[23] The Government does not challenge the Court's jurisdiction to consider Defendant's new status in home confinement. Rather, the Government argues that this new fact precludes Defendant's Motion because he is no longer in a facility.

Defendant is not a threat to his community. Defendant was only 21 when he committed the crime. He is now 33. Prior to the instant offense, Defendant had no criminal history. The BOP has classified Defendant a minimum-security risk. While in prison, Defendant did not incur any disciplinary infractions. As Defendant currently is mostly confined to his bed and is unable to stand for more than short periods of time, the Court believes that he does not pose a significant threat to public safety. Nonetheless, at this time, the Court will not modify Defendant's five-year term of supervised release. Ongoing oversight by Probation functions as an additional protection to the community.

### C.   The § 3553(a) factors favor modification of Defendant's Sentence

The Court finds that reducing Defendant's 180-month term of imprisonment to time served is supported by the factors in 18 U.S.C. § 3553(a). Additional relevant factors include: the characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; whether the defendant has acquired correctional treatment in the most effective manner; and the need to avoid unwanted sentence disparities among defendants guilty of similar conduct. While the offense was serious, Defendant's sentence reflected the seriousness of his offense and he has paid for his conduct by serving, without infractions, more than nine years in prison. Keeping Defendant incarcerated for the approximate two years remaining on his sentence will not meaningfully advance the purposes of sentencing. Further, while incarcerated, Defendant has worked hard to prepare himself to contribute meaningfully to society upon release. He has taken part in educational programs and engaged in work within the prison system. The Defendant has shown that he is one of those persons for whom compassionate release is appropriate.

IT IS ORDERED:

1. Defendant's REQUEST FOR EMERGENCY HEARING ON MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) (Doc. 112) is GRANTED;

2. Defendant's MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) (Doc. 103) is GRANTED;

3. Defendant's sentence of 180 months of incarceration is reduced to time already served; and

4.  In all other respects, Defendant's sentence remains unchanged.


_____
SENIOR UNITED STATES DISTRICT JUDGE